# EXHIBIT A

2/4/2020                                  CIVDS1937879 Actions - San Bernardino Main

# Actions

**Home**    Complaints/Parties    Actions    Minutes    Pending Hearings    Case Report    Images

Case Type: [                                    ▼]

Case Number: [          ]    [ Search ]

### Case CIVDS1937879 - JOHN DOE -V- BOY SCOUTS OF AMERICA, ET AL

[ Move To This Date ]

| Viewed | Date | Action Text | Disposition | Image |
|--------|------|-------------|-------------|-------|
| | 06/19/2020 8:30 AM DEPT. S32 | TRIAL SETTING CONFERENCE - <u>Minutes</u> | | |
| N | 01/06/2020 | PETITION & ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM FOR MINOR JOHN DOE IS D.H. -GRANTED-. SIGNED BY WILFRED J SCHNEIDER JR.. | Not Applicable | 📷 |
| | 12/19/2019 | PLAINTIFF JOHN DOE FIRST PAPER FEE PREVIOUSLY PAID IN FULL. | Not Applicable | |
| | 12/19/2019 | FILING FEE PAID BY JOHN DOE FOR FILING FEE | Not Applicable | |
| N | 12/19/2019 | CERTIFICATE OF ASSIGNMENT RECEIVED. | Not Applicable | 📷 |
| N | 12/19/2019 | NOTICE IMAGED | Not Applicable | 📷 |
| | 12/19/2019 | CASE ASSIGNED FOR ALL PURPOSES TO DEPARTMENT S32 | Not Applicable | |
| N | 12/19/2019 | CIVIL CASE COVER SHEET FILED. | Not Applicable | 📷 |
| | 12/19/2019 | NO SUMMONS ISSUED | Not Applicable | |
| | 12/19/2019 | COMPLAINT AND PARTY INFORMATION ENTERED | Not Applicable | |

Paul Mones [SBN: 128329]
Courtney Kiehl [SBN: 310577]
PAUL MONES, P.C.
13101 Washington Blvd, Suite 103
Los Angeles, CA 90066
Phone: 310-566-7418

Attorneys for PLAINTIFF, JOHN DOE

```
                                            F I L E D
                                   SUPERIOR COURT OF CALIFORNIA
                                    COUNTY OF SAN BERNARDINO
                                      SAN BERNARDINO DISTRICT

                                        DEC 1 9 2019

                          BY _____
                                   DEBRA PEDROSA, DEPUTY
```

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN BERNARDINO

JOHN DOE, a minor, an individually and by
his Guardian Ad Litem, R.H., QC

PLAINTIFF,

vs.

BOY SCOUTS OF AMERICA; BOY SCOUTS
OF AMERICA, CALIFORNIA INLAND
EMPIRE COUNCIL, and DOES 1 through 100.

DEFENDANTS.

Case No.: CIV DS 1 9 3 7 8 7 9

**COMPLAINT FOR DAMAGES**

1. **NEGLIGENCE;**
2. **NEGLIGENT SUPERVISION AND FAILURE TO WARN PLAINTIFF;**
3. **NEGLIGENT HIRING AND RETENTION;**
4. **NEGLIGENT FAILURE TO WARN, TRAIN OR EDUCATE PLAINTIFF; AND**
5. **BATTERY.**

**DEMAND FOR JURY TRIAL**

Based upon information and belief available to PLAINTIFF, John Doe, at the time of the filing of this Complaint for Damages, PLAINTIFF makes the following allegations:

### PARTIES

1. PLAINTIFF, John Doe is a minor male. PLAINTIFF was born on June 5, 2002 and was a minor at the time of the sexual abuse alleged herein. PLAINTIFF alleges that he was the victim of sexual abuse, among other causes of action as set forth herein. As such, for his privacy and security, he is entitled to protect his identity in this public court filing by not disclosing his full name.

1

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE

2.  DEFENDANT, BOY SCOUTS OF AMERICA ("BSA") is a Congressionally Chartered Corporation authorized to conduct business and conducting business in the State of California, County of Los Angeles. At all times relevant, DEFENDANT BSA operated a youth program for boys, and invited the participation of minor boys, including PLAINTIFF.

3.  DEFENDANT, BOY SCOUTS OF AMERICA, CALIFORNIA INLAND EMPIRE COUNCIL ("COUNCIL"), is a California Corporation authorized to conduct business and conducting business in the State of California with its principal place of business in Redlands, California and is a regional subsidiary corporation under the actual control of DEFENDANT BSA. Upon information and belief, DEFENDANT COUNCIL acted at all times relevant in the capacity to assist DEFENDANT BSA pursuant to its charter to carry out its policies, goals and practices in the Inland Empire area.

4.  Charles Kip Yotter ("Yotter"), was an individual who was employed, controlled and/or supervised by DEFENDANTS BSA and COUNCIL. Yotter was, at the time of the sexual abuse of PLAINTIFF, an agent of DEFENDANTS BSA and COUNCIL as an adult volunteer subject to the direction, control and supervision of DEFENDANTS.

5.  DEFENDANTS DOES 3 through 100, inclusive, are individuals and/or business or corporate entities incorporated in and/or doing business in California whose true names and capacities are unknown to PLAINTIFF who therefore sues such defendants by such fictitious names, and who will amend the Complaint to show the true names and capacities of each such DOE DEFENDANT when ascertained. Each such DEFENDANT DOE is legally responsible in some manner for the events, happenings, and/or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

6.  DEFENDANT BSA, DEFENDANT COUNCIL, and DOES 3 through 100 are sometimes hereinafter referred to as the "DEFENDANTS."

2

7.    Each DEFENDANT is the agent. servant, and/or employee of other
      DEFENDANTS, and each DEFENDANT was acting within the course and scope
      of his, her or its authority as an agent, servant, and/or employee of the other
      DEFENDANTS.

8.    DEFENDANTS, and each of them, are individuals, corporations, partnerships, and
      other entities which engaged in, joined in, and conspired with the other wrongdoers
      in carrying out the tortious and unlawful activities described in this Complaint.

### BACKGROUND FACTS APPLICABLE TO ALL COUNTS

9.    PLAINTIFF hereby incorporates by reference all previous paragraphs as if fully set
      forth herein.

10.   In 1916, Congress granted DEFENDANT BSA a federal charter, now codified as
      36 U.S.C. Ch. 309.  Under that Charter, Congress granted DEFENDANT BSA the
      exclusive right to BSA's name, emblems, badges, and descriptive words and
      markings.

11.   Since 1910, DEFENDANT BSA has derived millions of dollars a year licensing the
      rights to its name, emblems, scouting paraphernalia, and BSA-branded merchandise
      to affiliated scouting organizations throughout the United States and abroad (See 36
      U.S.C. §80305).

12.   Upon information and belief, DEFENDANT BSA has realized income from these
      assets by marketing them to parents and their children, including PLAINTIFF and
      his parents.

13.   Upon information and belief, in addition to its exclusive license, DEFENDANT
      BSA enjoys numerous tax payer subsidies, including (1) free access to national
      forest lands (16 U.S.C. §539f); (2) free use of Defense Department equipment and
      facilities for BSA Jamborees (10 U.S.C. §2554); (3) free ground and air
      transportation, communications, emergency, and technical services from the
      National Guard (32 U.S.C. §508); (4) free use of meeting facilities, transportation,
      and support services at United States military bases world-wide (10 U.S.C. §2606);

3

(5) free firearms, ammunition, repairs, supplies, and marksmanship training equipment (36 U.S.C. §40731); (6) free military surplus (10 U.S.C. Ch. 943); and (7) Department of Agriculture grants (7 U.S.C. §7630).

14. DEFENDANT BSA's marketing includes encouraging parents to enroll their children in DEFENDANT'S scouting programs and activities.

15. Upon information and belief, enrollment secures parents' and children's commitment to follow a system that encourages parents to entrust their children's health and safety to DEFENDANT BSA. This entrustment empowers BSA to secure each child's oath to uphold the "Scout Law," to adopt the "Scout" identity, and to adhere to a system that requires children to engage in activities that expose them to adults and others.

16. Upon information and belief, this system includes over-night outings, camping events, and trips away from parents.

17. Upon information and belief, DEFENDANT'S system is reward-based, obligating the child to purchase emblems, badges, and other Scouting paraphernalia, which in turn creates profit for the organization.

18. Upon information and belief, DEFENDANT BSA implements scouting programs through local Boy Scouts of America councils to which it issues licenses to the Boy Scouts of America name, emblem, badges, markings, and youth programs.

19. Upon information and belief, DEFENDANT BSA requires local councils and troops within a local council to strictly adhere to BSA's organizational charter and "Standards of Leadership" requirements.

20. At all relevant times, Yotter was employed by DEFENDANT COUNCIL as an agent of the DEFENDANT BSA and was subject to BSA's authority and control.

21. Upon information and belief, DEFENDANT BSA is one of the largest non-profits in the United States, with income exceeding $780 million per year.

4

22. Upon information and belief, DEFENDANT BSA is the largest youth organization in the United States, serving more than 2.7 million youth members, ages ten to eighteen, with over one million adult volunteers.

23. Shortly after its inception, DEFENDANT BSA became aware and was otherwise put on actual notice that a significant number of its adult Boy Scout Leaders ("Scout Leaders") were using their position of trust and authority as Scout Leaders to manipulate and sexually abuse youth participating in DEFENDANT BSA's scouting programs.

24. Since its inception, DEFENDANT BSA aggressively marketed the wholesomeness and safety of its programs to the American public.

25. Upon information and belief, DEFENDANT BSA simultaneously concealed from scouts and their parents BSA's certain knowledge that pedophiles had been infiltrating BSA in large numbers for many years.

26. Upon information and belief, DEFENDANT BSA also misrepresented to scouts and their parents that scouts were safe in scouting programs, when, in fact, scouts were at an unreasonably heightened risk of sexual abuse. BSA made said misrepresentation to PLAINTIFF and his parents.

27. By the early 1920s, DEFENDANT BSA implemented an internal "Red Flag" system to identify Scout Leaders whom DEFENDANT BSA considered "ineligible" to hold positions as Scout Leaders. This internal system eventually became known as the "Ineligible Volunteer Files" (hereinafter "I.V. Files").

28. Upon information and belief, historically, the most common reason for a volunteer to be placed in the I.V. Files has been allegations of sexual abuse of boys. This subset of I.V. Files has been referred to by DEFENDANTS as the "Perversion Files."

29. By 1935, DEFENDANT BSA had already identified and removed over one thousand adult men from their positions as Scout Leaders for sexually abusing boys involved in DEFENDANT BSA'S scouting programs.

5

30. Upon information and belief, not all of these men were removed from their positions as Scout Leaders. Rather, at some point prior to 1955, DEFENDANT BSA implemented a secret, internal "probation program."

31. Upon information and belief, under DEFENDANT BSA's "probation program," a significant number of Scout Leaders believed to have sexually abused scouts were allowed to continue on as Scout Leaders with access to minors.

32. Upon information and belief, neither scouts nor their parents were informed if a Scout Leader was on "probation," or that the reason for the probationary status was for sexually abusing scouts.

33. Upon information and belief, this probationary status evidenced DEFENDANT BSA'S continued policy of denying or otherwise covering up the problem of sexual abuse within its ranks of Scout Leaders.

34. DEFENDANT BSA went to significant lengths to keep the existence of their "Perversion File" system and the problem of sexual abuse by Scout Leaders a secret from scouts and the public. Local councils were instructed—and agreed—not to keep Perversion File materials at their offices, but rather to send everything to BSA national and destroy any copies.

35. Through the Perversion Files, DEFENDANT BSA gained unique knowledge through its repository of informative data containing the identities and methods of sexual abusers that had successfully infiltrated scouting.

36. Upon information and belief, the I.V. Files highlight the vulnerabilities of DEFENDANT BSA'S scouting programs and activities, including sexual abusers' patterns for grooming victims, and widely found biographical and behavioral characteristics shared by sexual abusers that had entered or were attempting to enter scouting.

37. Upon information and belief, for a century, DEFENDANT BSA has known of distinctive characteristics of BSA's scouting program that renders scouts particularly prone to child sexual abuse by its adult volunteers.

6

38.  By 1935, BSA had accumulated hundreds of files on pedophiles that had successfully infiltrated or attempted to infiltrate its programming.

39.  Upon information and belief, between 1935 and the events that are the subject of this Complaint, DEFENDANT BSA received thousands of reports of Scout Leaders sexually abusing scouts in their programs. These reports were continuous in frequency over time and were spread throughout the geographic bounds of the DEFENDANT BSA's scouting programs.

40.  Upon information and belief, in the 1970s, BSA recognized the potential liabilities presented by possessing and maintaining the I.V. Files.

41.  Upon information and belief, over the course of two years in the early 1970s, three BSA executives reviewed and permanently destroyed thousands of I.V. Files.

42.  Upon information and belief, DEFENDANT BSA executives kept no retention logs showing which or how many of the files BSA destroyed.

43.  Upon information and belief, DEFENDANT BSA made no contemporaneous record of its criteria in determining which files to destroy and which to save.

44.  Upon information and belief, approximately 6,000 files survived BSA's purge and are in BSA's possession.

45.  Upon information and belief, approximately 1,900 of those files are now in the public domain. The exact number of sexual abuse reports received by BSA is unknown, in part because of the mid-1970s file purge.

46.  Upon information and belief, by 2018, BSA's secret cache of perversion files on sexual abusers were in the thousands. These reports demonstrated to DEFENDANT BSA that it had a continuous and systemic problem of adult volunteers sexually abusing minors participating in DEFENDANT BSA'S scouting programs.

47.  The I.V. Files, created prior to PLAINTIFF'S participation in Scouting, demonstrate that DEFENDANT BSA had evidence (1) that scouting was

7

continuously attracting pedophiles across time and geography and (2) of scouting's
distinctive characteristics to make it attractive to sexual abusers, including:

    a.    Providing a sexual abuser access to scouts alone and away from their parents in secluded settings like campouts, overnight hikes, and summer camps;

    b.    Providing opportunities for sexual abusers to abuse a scout by getting them into situations where they have to change clothing or spend the night with them;

    c.    Providing sexual abusers an opportunity to volunteer to spend time with and have access to minor scouts;

    d.    Conditioning boys to the concept of strict obedience to adults and a bonding mechanism that sexual abusers utilize;

    e.    Promoting the idea of secret ceremonies, rituals, and loyalty oaths, all of which help facilitate a sexual abuser to keep his victim silent and compliant;

    f.    Conducting no criminal background checks on volunteers;

    g.    Not prohibiting adults from sleeping in tents with boys overnight;

    h.    Not prohibiting adult leaders from spending time alone with individual scouts;

    i.    Not prohibiting adult leaders form having contact with scouts outside of authorized scouting activities; and

    j.    Not specifically prohibiting adult leaders from having scouts to their home to work on scout related projects, including merit badges.

48.    The I.V. Files further demonstrate that for decades, DEFENDANT BSA:

    a.    Re-admitted sexual abusers who had previously been removed for child abuse "probation," thereby exposing unsuspecting children to sexual abuse;

    b.    Had a practice of not reporting incidents of abuse to law enforcement;

8

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE

c.   Had a pattern of accommodating sexual abusers, in which they would be permitted to resign from scouting and BSA would agree not to report the abuse to authorities;

d.   Failed to produce I.V. Files to its review board and scout-safety consultants, who were endeavoring to develop and implement meaningful safeguards and barriers to pedophile infiltration;

e.   Refused to fingerprint, photograph, or perform background checks on its adult volunteers, allowing removed sexual abusers using an alias to sneak back into scouting through another troop;

f.   Refused to utilize widely accepted organizational best practices that would establish reasonable barriers to intrusion by sexual abusers;

g.   Refused to educate local councils, staff, and troop leaders regarding the true risks posted by sexual abusers to scouts; and

h.   Refused to effectively monitor local councils and troops to ensure that appropriate safeguards were being used in the selection and retention of adult leaders.

49.   Upon information and belief, prior to the abuse alleged herein in or around 2018, DEFENDANT BSA also knew or should have known that its I.V. File system did not function to prohibit all known predators from participating in scouting, was otherwise flawed, and in many cases ineffective to address the sustained and systemic problem of sexual abuse within its programming.

50.   Upon information and belief, despite their knowledge of the danger of sexual abuse of scouts, at no time prior to 2018 did DEFENDANTS implement feasible and reasonable child abuse prevention policies to effectively warn scouts such as PLAINTIFF or their parents (including PLAINTIFF'S parents), about this known danger. Nor did BSA alert authorities to the nature and scope of this danger.

51.   Upon information and belief, DEFENDANTS intentionally and actively concealed the continuous and systemic danger of sexual abuse of scouts in their programs.

9

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE

52. Upon information and belief, DEFENDANTS also actively promoted and represented to the public that their scouting programs were safe and wholesome, and their adults leaders were safe and trustworthy.

53. At all times relevant to this Complaint, DEFENDANTS invited participation of minors, including PLAINTIFF, into their scouting programming and selected adults to serve in leadership positions.

54. DEFENDANT BSA continues to make false and misleading public statements regarding the risks of sexual abuse in scouting; continues to minimize and downplay the harm of sexual abuse to children in scouting; fails to reach out to provide support and assistance to scouts it knows were likely sexually abused by leaders; and continues to deny the truth about the extent of its historical knowledge of the nature and extent of sexual abuse of scouts by adult leaders.

55. Upon information and belief, DEFENDANT BSA has known for decades that scouting involved an unreasonably high risk of sexual abuse by adult leaders.

56. Upon information and belief, DEFENDANT BSA made repeated false counterfactual claims that the number of pedophiles in its programming was insignificant, that scouts were reasonably safe from sexual abuse by adult leaders, and that BSA was not a magnet for pedophiles, all of which BSA made (1) knowing that the claims were false or (2) with reckless disregard for the truth or falsity.

57. PLAINTIFF alleges that he trusted DEFENDANT BSA and he reasonably relied upon BSA'S representations that it presented a moral and safe place for minors.

58. Upon information and belief, DEFENDANTS selected and approved Yotter as an adult leader, giving him the authority and power to do the following: to provide instruction, counseling, moral guidance, and physical supervision of boys participating in Boy Scout programs and activities; to enforce the rules governing the boys' participation; and to undertake other duties.

10

59. Upon information and belief, DEFENDANTS knew that as part of his duties as an adult leader, Yotter would be in a position of trust, confidence, and authority over the boys involved in scout programs, including PLAINTIFF.

60. Upon information and belief, as an adult leader, Yotter had access to minors, including PLAINTIFF.

61. There was a special relationship between PLAINTIFF and DEFENDANTS giving rise to a duty for DEFENDANTS to protect PLAINTIFF from harm.

62. PLAINTIFF first got involved in scouting when he was approximately 7 years old.

63. PLAINTIFF first met Yotter in his capacity as an adult leader interacting with PLAINTIFF'S Cub Scout Pack 30 in Lake Elsinore, California.

64. PLAINTIFF is a developmentally challenged minor, a fact which Yotter knew soon after he met PLAINITIFF.

65. Sometime after PLAINTIFF first met Yotter in or around 2012, Yotter began a pattern of grooming PLAINTIFF for the purpose of sexually abusing him.

66. Yotter's grooming of PLAINTIFF included but was not limited to giving PLAINTIFF special attention, praise, and gifts, including knives.

67. Yotter exploited the trust that PLAINTIFF, a vulnerable developmentally delayed child, placed in him.

68. Yotter's sexual abuse of PLAINTIFF occurred in or around 2018.

69. Yotter's sexual abuse of PLAINTIFF included but was not limited to Yotter fondling PLAINTIFF'S genitals; Yotter masturbating PLAINTIFF to the point of ejaculation; Yotter orally copulating PLAINTIFF; Yotter forcing PLAINTIFF to orally copulate him; Yotter anally penetrating PLAINTIFF with a foreign object; and Yotter photographing PLAINTIFF while naked.

70. The sexual abuse occurred in Yotter's trailer in Lake Elsinore, California.

71. PLAINTIFF estimates the sexual abuse occurred on at least two occasions in 2018.

72. PLAINTIFF participated in scout programs from approximately 2009 through 2018.

11

| | | |
|---|---|---|
| 1 | 73. | In a letter dated May 26, 2019, Yotter wrote to PLAINTIFF, "I know that you are |
| 2 | | going through an emotional roller coaster right now about who you are and what |
| 3 | | you want to be, but rest assured you will always be my close friend and I love you. |
| 4 | | I sure would have liked just one more time though. I hope that puts a smile on your |
| 5 | | face. I can't get you out of my mind." |
| 6 | 74. | In the same letter Yotter further stated, "When you do get back you have to see me |
| 7 | | ASAP. Maybe a trailer trip would be good for you." |
| 8 | 75. | In or around June of 2019, PLAINTIFF reported the sexual abuse to lawful civil |
| 9 | | authorities in Utah. |
| 10 | 76. | Upon information and belief, on September 26, 2019, Yotter was arrested by the |
| 11 | | Riverside County Sheriff's Department for crimes of oral copulation with a minor, |
| 12 | | forced oral copulation of a minor, and forcible penetration with a foreign object. |
| 13 | 77. | Upon information and belief, on September 27, 2019, Yotter was released from |
| 14 | | custody following his arrest. |
| 15 | 78. | Upon information and belief, on September 30, 2019, Yotter was found dead inside |
| 16 | | his residence, the victim of a self-inflicted gunshot wound. |
| 17 | 79. | At all times relevant, Yotter's sexual abuse of PLAINTIFF was foreseeable to |
| 18 | | DEFENDANTS. |
| 19 | 80. | At all times relevant, DEFENDANTS knew or should have known the danger that |
| 20 | | child sexual abusers presented to minor scouts decades before PLAINTIFF was |
| 21 | | sexually abused as described herein. |
| 22 | 81. | Despite this knowledge, DEFENDANTS failed to protect PLAINTIFF from sexual |
| 23 | | abuse and harassment by Yotter. |
| 24 | 82. | PLAINTIFF and his parents were not specifically and adequately warned by |
| 25 | | DEFENDANTS prior to PLAINTIFF'S sexual victimization about the dangers of |
| 26 | | being sexually abused by adult leaders like Yotter. |
| 27 | 83. | PLAINTIFF and his parents were never informed by the DEFENDANTS prior to |
| 28 | | PLAINTIFF'S sexual victimization about the existence of the Perversion Files. |

12

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE

84. PLAINTIFF and his parents were never informed by the DEFENDANTS prior to PLAINTIFF'S sexual victimization about the DEFENDANTS' vast knowledge of sexual abuse of Scouts by adult leaders.

85. As a direct result of the DEFENDANTS' conduct described herein, PLAINTIFF has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining full enjoyment of life; and has incurred and will continue to incur expenses for medical psychological treatment, therapy, and counseling.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

### (Against All DEFENDANTS)

86. PLAINTIFF hereby incorporates by reference all previous paragraphs as if fully set forth herein.

87. DEFENDANTS owed minor PLAINTIFF a duty to protect him when he was entrusted to their care by PLAINTIFF'S parents.

88. PLAINTIFF'S care, welfare, and/or physical custody was temporarily entrusted to DEFENDANTS during scouting related activities from approximately 2009 through 2018.

89. Upon information and belief, DEFENDANTS owed PLAINTIFF, a minor child, a special duty of care, in addition to a duty of ordinary care, and owed PLAINTIFF the higher duty of care that adults dealing with children owe to protect them from harm.

90. DEFENDANTS by and through their agents, volunteers, servants, and employees, knew or reasonably should have known of Yotter's dangerous and exploitive propensities and/or that Yotter was an unfit agent.

13

91. Upon information and belief, it was foreseeable that if DEFENDANTS did not adequately exercise or provide the duty of care owed to children in their care, including but not limited to PLAINTIFF, the children entrusted in DEFENDANTS' care would be vulnerable to sexual abuse by adults, including Yotter.

92. DEFENDANTS breached their duty of care to the minor PLAINTIFF by allowing Yotter to come into contact with PLAINTIFF without supervision; by failing to adequately hire, supervise, or retain Yotter who they permitted and enabled to have access to PLAINTIFF; and by failing to investigate or otherwise confirm or deny such facts about Yotter.

93. Thereby, DEFENDANTS enabled PLAINTIFF to continue to be endangered and sexually abused, and/or created the circumstances where PLAINTIFF was less likely to receive medical/mental health care and treatment, thus exacerbating the harm done to PLAINTIFF; and/or by holding out Yotter to the PLAINTIFF and his parents as being in good standing and trustworthy.

94. DEFENDANTS cloaked within the façade of normalcy DEFENDANTS' and/or Yotter's contact and/or actions with PLAINTIFF, and/or disguised the nature of the sexual abuse and contact.

95. As a result of the above-described conduct, PLAINTIFF has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining full enjoyment of life; and has incurred and will continue to incur expenses for medical psychological treatment, therapy, and counseling.

//
//
//
//

14

## SECOND CAUSE OF ACTION

## NEGLIGENT SUPERVISION AND FAILURE TO WARN PLAINTIFF

### (Against All DEFENDANTS)

96.  PLAINTIFF hereby incorporates by reference all previous paragraphs as if fully set forth herein.

97.  DEFENDANTS had a duty to provide reasonable supervision of Yotter; to use reasonable care in investigating Yotter; and to provide adequate warning to the PLAINTIFF, PLAINTIFF'S family, and minor scouts of Yotter's dangerous propensities and unfitness.

98.  DEFENDANTS, by and through their agents, volunteers, servants, and employees, knew or reasonably should have known that Yotter was an unfit agent.

99.  Despite such knowledge, DEFENDANTS negligently failed to supervise Yotter in his position of trust and authority over minor scouts, where he was able to commit the sexual abuse of PLAINTIFF.

100.  Upon information and belief, DEFENDANTS failed to provide reasonable supervision of Yotter, failed to use reasonable care in investigating Yotter, and failed to provide adequate warning to PLAINTIFF and PLAINTIFF'S parents of Yotter's dangerous propensities and unfitness.

101.  DEFENDANTS further failed to take reasonable measures to prevent future sexual abuse by Yotter.

102.  As a result of the above-described conduct, PLAINTIFF has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining full enjoyment of life; and has incurred and will continue to incur expenses for medical psychological treatment, therapy, and counseling.

//

15

1                          **THIRD CAUSE OF ACTION**

2                 **NEGLIGENT HIRING AND RETENTION**

3                      **(Against All DEFENDANTS)**

103. PLAINTIFF hereby incorporates by reference all previous paragraphs as if fully set forth herein.

104. DEFENDANTS had a duty to not hire and/or retain Yotter given his dangerous and exploitive propensities.

105. DEFENDANTS, by and through their agents, volunteers, servants, and employees, knew or reasonably should have known of Yotter's dangerous and exploitive propensities and/or that he was an unfit agent.

106. Despite such knowledge, DEFENDANTS negligently hired and/or retained Yotter in a position of trust and authority over minor scouts, where he was able to commit the sexual abuse of PLAINTIFF.

107. DEFENDANTS failed to use reasonable care in investigating Yotter and failed to provide adequate warning to PLAINTIFF, PLAINTIFF'S parents, and law enforcement of Yotter's dangerous propensities and unfitness.

108. DEFENDANTS further failed to take reasonable measures to prevent future sexual abuse.

109. As a result of the above-described conduct, PLAINTIFF has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining full enjoyment of life; and has incurred and will continue to incur expenses for medical psychological treatment, therapy, and counseling.

//

//

//

16

1

2

3

**FOURTH CAUSE OF ACTION**

**NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE PLAINTIFF**

**(Against All DEFENDANTS)**

4     110.   PLAINTIFF incorporates all paragraphs of this Complaint as if fully set forth

5            herein.

6     111.   DEFENDANT breached its duty to take reasonable protective measures to protect

7            PLAINTIFF and scouts from the risk of childhood sexual abuse by Yotter, such as

8            the failure to properly warn, train, or educate PLAINTIFF and other scouts, their

9            parents, and BSA adult volunteers and employees, about how to avoid such risk,

10          pursuant to *Juarez v. Boy Scouts of America, Inc.*, 97 Cal. Rptr. 2d 12, 81 Cal. App.

11          4th 377 (2000).

12     112.   By promulgating a child protection program known as the Youth Protection

13            Program also known as the Youth Protection Guideline Program, DEFENDANT

14            undertook a duty to implement the program reasonably.

15     113.   Upon information and belief, DEFENDANT failed to implement the program

16            reasonably by enacting policies and practices that did not provide adequate training

17            on child abuse prevention to Scouts or their parents.

18     114.   Upon information and belief, the Youth Protection Program was also deficient and

19            fell below the standard of care by failing to clearly instruct volunteers and

20            employees regarding warning signs of childhood sexual abuse and failing to

21            establish a clear procedural organizational response to suspicions of childhood

22            sexual abuse.

23     115.   Upon information and belief, the Youth Protection program was implemented for

24            the purpose of protecting youth participants in Boy Scouts, including PLAINTIFF,

25            and by implementing a substandard program, DEFENDANTS increased the risk

26            that children would be sexually abused.

27     116.   As a result of the above described conduct, PLAINTIFF has suffered and continues

28            to suffer, great pain of mind and body, physical injury, shock, emotional distress,

17

1         physical manifestations of emotional distress, embarrassment, loss of self-esteem,

2         disgrace, humiliation, and loss of enjoyment of life; was prevented and will

3         continue to be prevented from performing PLAINTIFF'S daily activities and

4         obtaining the full enjoyment of life; has sustained and will continue to sustain loss

5         of earnings and earning capacity; and/or has incurred and will continue to incur

6         expenses for medical and psychological treatment, therapy, and counseling.

7                       **FIFTH CAUSE OF ACTION**

8                             **BATTERY**

9                    **(Against All DEFENDANTS)**

10   117.   PLAINTIFF hereby incorporates by reference all previous paragraphs as if fully set

11         forth herein.

12   118.   On at least two occasions in or around 2018, Yotter perpetrated unpermitted,

13         harmful, and offensive sexual abuse upon PLAINTIFF, and DEFENDANTS

14         ratified and/or approved of that sexual abuse.

15   119.   As a result of the above-described conduct, PLAINTIFF has suffered, and continues

16         to suffer great pain of mind and body, shock, emotional distress, physical

17         manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace,

18         humiliation, and loss of enjoyment of life; was prevented and will continue to be

19         prevented from performing daily activities and obtaining full enjoyment of life; and

20         has incurred and will continue to incur expenses for medical psychological

21         treatment, therapy, and counseling.

22

23         WHEREFORE, PLAINTIFF prays for damages; punitive damages against all

24   DEFENDANTS; costs; interest; statutory and civil penalties according to law; and such

25   other relief as the court deems appropriate and just.

26   //

27   //

28   //

18

1      **JURY DEMAND**

2      PLAINTIFF demands a jury trial on all issues so triable.

3

4

5      Dated: December 18, 2019          By: _____

6                                              Paul Mones
                                                Courtney Kiehl
7                                               Attorneys for PLAINTIFF

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES ARISING FROM CHILDHOOD SEXUAL ABUSE

# CIV-191219-CIV-DS1937879-CCCS-084104



### Scanned Document Coversheet

System Code: CIV

Case Number: DS1937879

Case Type: CIV

Action Code: CCCS

Action Date: 12/19/19

Action Time: 8:41

Action Seq: 0004

Printed by: DPEDR

> **THIS COVERSHEET IS FOR COURT PURPOSES ONLY, AND THIS IS NOT A PART OF THE OFFICIAL RECORD. YOU WILL NOT BE CHARGED FOR THIS PAGE**

## Civil Case Cover Sheet filed.



NEW FILE

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Paul Mones [SBN: 128329]<br>Paul Mones, P.C.<br>13101 Washington Blvd, Suite 103<br>Los Angeles, CA 90066<br>TELEPHONE NO.: 310-566-7418     FAX NO.:<br>ATTORNEY FOR *(Name):* Plaintiff John Doe | **F I L E D**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN BERNARDINO<br>SAN BERNARDINO DISTRICT<br><br>DEC 19 2019<br><br>BY _____<br>DEBRA PEDROSA, DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Bernardino
STREET ADDRESS: 247 West Third Street
MAILING ADDRESS: 247 West Third Street
CITY AND ZIP CODE: San Bernardino, CA 92415-0210
BRANCH NAME: San Bernardino

CASE NAME:
John Doe v. Boy Scouts of America, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: CIVDS 1937879 |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☑ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify):*  5
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 12/18/19
Paul Mones
_____
(TYPE OR PRINT NAME)                    ► (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |



CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one box** for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
            or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]                    **CIVIL CASE COVER SHEET**                    Page 2 of 2

## CIV-200106-CIV-DS1937879-PTOGAL-130902



### Scanned Document Coversheet

System Code:    CIV
Case Number:   DS1937879
Case Type:      CIV
Action Code:    PTOGAL
Action Date:    01/06/20
Action Time:      1:09
Action Seq:     0002
Printed by:     SJAMI

THIS COVERSHEET IS FOR COUR
PURPOSES ONLY, AND THIS IS NO
A PART OF THE OFFICIAL RECORI
YOU WILL NOT BE CHARGED FO
THIS PAGE

## Petition & Order for Appointment of Guardian Ad Litem for minor JOHN DOE is D.H. -GRANTED-. Signed by WILFRED J SCHNEIDER JR..



NEW FILE

CIV-010

| ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY (Name, State Bar number, and address):
Paul Mones [SBN: 128329]
Paul Mones, P.C.
13101 Washington Blvd, Suite 103
Los Angeles, CA 90066
TELEPHONE NO: 310-566-7418   FAX NO (Optional):
E-MAIL ADDRESS (Optional): paul@paulmones.com
ATTORNEY FOR (Name): Plaintiff John Doe

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Bernardino
STREET ADDRESS: 247 West Third Street
MAILING ADDRESS: 247 West Third Street
CITY AND ZIP CODE: San Bernardino, CA 92415-0210
BRANCH NAME: San Bernardino

PLAINTIFF/PETITIONER: John Doe

DEFENDANT/RESPONDENT: Boy Scouts of America, et al.

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JAN 0 6 2020

BY _____
SABRINA JAMISON, DEPUTY

| APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL ☐ EX PARTE | CASE NUMBER CIV DS 1 9 3 7 8 7 9 |
|---|---|

*NOTE: This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.*

1. Applicant (name): D.H.                                         is
   a. ☑ the parent of (name): John Doe B.H.
   b. ☐ the guardian of (name):
   c. ☐ the conservator of (name):
   d. ☐ a party to the suit.
   e. ☐ the minor to be represented (if the minor is 14 years of age or older).
   f. ☐ another interested person (specify capacity):

2. This application seeks the appointment of the following person as guardian ad litem (state name, address, and telephone number):
   D.H.; 31809 St. Pierre Ln, Lake Elsinore, CA 92530; 951-805-8039

3. The guardian ad litem is to represent the interests of the following person (state name, address, and telephone number):
   B.H.; 31809 St. Pierre Ln, Lake Elsinore, CA 92530; 951-805-8039

4. The person to be represented is:
   a. ☑ a minor (date of birth): 6/5/02
   b. ☐ an incompetent person.
   c. ☐ a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. ☑ the person named in item 3 has a cause or causes of action on which suit should be brought (describe):
      Negligence; Negligent Supervision and Failure to Warn Plaintiff; Negligent Hiring and Retention;
      Negligent Failure to Warn, Train or Educate Plaintiff; and Battery.

☐ Continued on Attachment 5a.

| Form Adopted for Mandatory Use Judicial Council of California CIV-010 [Rev. January 1, 2008] | **APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL** | Page 1 of 2 Code of Civil Procedure, § 372 et seq. |
|---|---|---|

CIV-010

| PLAINTIFF/PETITIONER: John Doe | CASE NUMBER |
|---|---|
| DEFENDANT/RESPONDENT: Boy Scouts of America, et al. | |

5  b. ☐  more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

c. ☐  the person named in item 3 has no guardian or conservator of his or her estate.

d. ☐  the appointment of a guardian ad litem is necessary for the following reasons (specify):

☐  Continued on Attachment 5d.

6  The proposed guardian ad litem's relationship to the person he or she will be representing is:
a. ☑  related (state relationship):  Mother
b. ☐  not related (specify capacity):

7  The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. (If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):

☐  Continued on Attachment 7.

Paul Mones
_____
(TYPE OR PRINT NAME)                 ▶                (SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date:  12/18/19

Paul Mones
_____
(TYPE OR PRINT NAME)                 ▶                (SIGNATURE OF APPLICANT)

## CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.
Date  12/18/19

D.H.
_____
(TYPE OR PRINT NAME)                 ▶                (SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

## ORDER    ☐ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that (name):  D.H.
is hereby appointed as the guardian ad litem for (name):  John Doe
for the reasons set forth in item 5 of the application.
Date:  1/6/2020

☐  SIGNATURE FOLLOWS LAST ATTACHMENT    JUDICIAL OFFICER
Wilfred J. Schneider, Jr.

CIV-010 [Rev. January 1, 2008]

**APPLICATION AND ORDER FOR APPOINTMENT
OF GUARDIAN AD LITEM—CIVIL**

Page 2 of 2